(C. D. 567)

W. A. AUGUR, INC. *v.* UNITED STATES

United States Customs Court, Second Division

(Decided December 11, 1941)

*Barnes, Richardson & Colburn* (*Howard C. Carter* and *Eugene F. Blauvelt* of counsel) for the plaintiff.

*Paul P. Rao*, Assistant Attorney General (*Joseph E. Weil*, special attorney), for the defendant.

Before TILSON, KINCHELOE, and DALLINGER, Judges

KINCHELOE, Judge: The merchandise the subject of this protest was returned by the examiner as "cotton netting—not fish nets," and was assessed for duty by the collector at 40 per centum ad valorem under paragraph 923 of the Tariff Act of 1930, as manufactures of cotton, not specially provided for. The plaintiff claims the merchandise dutiable at only 30 per centum under said paragraph 923 by virtue of the trade agreement with the United Kingdom, T. D. 49753, effective January 1, 1939, which, so far as relevant, reads as follows:

| Tariff Act of 1930; paragraph | Description of article | Rate of duty |
|---|---|---|
| 923 | Manufactures, wholly or in chief value of cotton, not specially provided for: * * *; fishing nets valued at 50 cents or more per pound; * * * | 30% ad val |

W. Russell Augur testified on behalf of the plaintiff. He stated he was president and treasurer of the plaintiff corporation, which deals in fishermen's nets and supplies; that the merchandise in question is made of cotton twine, number 20–9, and has a ¾-inch mesh; that it is 125 meshes deep, which is about 5 feet, and that as imported it is about 300 yards long. The witness testified further that he has been selling fishing nets in all sizes from 20 feet to 700 yards, and that in the fishermen's supplies business, within his experience, the terms "fish net" or "fish nets" and "fish netting" are synonymous, and that if a customer asked for 100 pounds of fish net or fish nets

he would get the same as a customer who asked for fishing netting (R. 5). Also that the chief use of the imported merchandise is for fishing. That he has also sold completed fish nets; that when a fish net is completed it is bound on the edges; that sometimes his firm binds them, but as a rule they sell the material, and the fisherman does his own binding. Further, that he is familiar with the use of the imported merchandise, which extends back to January 1, 1939, and that the chief use thereof is for fishing; that he does not use it for tennis; that a completed fish net is bound on the edges, but that they usually sell the material and let the fisherman do his own binding.

Lewis Lichtenstein was called as a witness by the Government. He stated he is salesman and manager of the Fish Net & Twine Co., of Jersey City, since 1911, and that his duties have been to foster sales and contact customers, and watch sales at the different branches in Richmond and Milwaukee. He testified that his firm manufactures fish nets and fish netting; that they have also imported some merchandise, mostly what they call cotton minnow netting of a mesh of about ½ or ¾ inch measured across diagonally; that they imported this cotton minnow netting 500 to 1,000 pounds at a time, and that it is usually put up in 100-pound pieces; also that he is familiar with merchandise which is made of cotton twine with a ¾-inch mesh and 125 mesh depth, and that they have imported and sold such merchandise for the last 5 years; that if it was sold in the original weight as it comes out of the bale it was sold as netting, and, if it was cut off in definite lengths and fitted with corks, lead, and lines, it was sold as fish nets, and that that has always been the practice during the period of time they have handled such merchandise (R. 20–21); also that he saw the use made of the netting sold to the fishermen; that they rigged it up into nets (R. 24). When asked to describe what was done to the netting that he sold, the witness answered:

> The merchandise we sold as netting, I have seen that stretched on a line across a room and seen them take a needle with twine and fit it with lines and cork and lead at spaces so many feet apart. (R. 25)

The contention of the Government is that the term "fishing nets" used in said trade agreement contemplates only completed articles for catching fish, and not fish netting which is material in the piece for making into fish nets. The plaintiff takes the opposing view, and claims that fishing nets include netting in the piece. On this point the testimony introduced by the plaintiff and the defendant is conflicting, but the tariff history on the subject seems to be more definite.

While the Tariff Act of 1930 makes no specific provision for cotton fishing nets or netting, it does specially provide for gill nettings and nets in paragraph 1006; for nets and nettings, etc., made on the Nottingham lace curtain machine, in paragraph 920; for nets and nettings

in chief value of human hair, in paragraph 1523; and for machines for making lace curtains, nets and nettings, in paragraph 372 of said act.

We think this undeniably shows that Congress recognized the terms "netting" or "nettings" as material in the piece, and the terms "net" or "nets" as completed articles, and that they were not to be regarded as synonymous terms. It is therefore significant that the trade agreement with the United Kingdom, modifying certain rates of duty under paragraph 923 of said Tariff Act of 1930, should have provided, among other things, only for "fishing nets valued at 50 cents or more per pound," and did not include "fishing netting" or "fish netting." Moreover, further light is thrown on such omission and intention by a reference to "Digests of Trade Data with Respect to Products on which Concessions were granted by the United States," published by the United States Tariff Commission in 1938 on the "Trade Agreement between the United States and the United Kingdom," volume VII, at page 9–94, under the caption "Cotton Fishing Nets," from which we quote the following:

Description and uses: Cotton fish nettings is made by bringing threads, twines, or cords together and knotting them at the intersections to form meshes. Fishermen usually refer to netting as "webbing" to distinguish it from completed nets ready for fishing. The completed net includes, besides webbing, the necessary attachments for rigging and manipulating, such as floats, sinkers, and ropes. * * *

And again at page 9–95:

United States Imports: Imports of cotton fish nets and netting, not recorded separately prior to 1933, have increased steadily from 172,000 pounds in that year to 846,000 pounds in 1937. * * * Almost all of the imports consist of netting or "webbing" to which sinkers, floats, and ropes must be added. A small part of the imports, however, consists of completed nets, such as aquarium nets, dip nets, and fish bags, * * *.

In the Dictionary of Tariff Information, 1924, at page 328, under the heading of "Fish netting and nets," appears the following:

Imports are small, the largest amounting to 66,644 pounds in 1918. In 1923 they totaled 8,044 pounds. Imports are mainly of linen gill netting from the United Kingdom, entered for manufacture into nets and then reexported with the benefit of the drawback. In 1905–1920 imports under this classification totaled 395,000 pounds, as compared with fish nets exported with the benefit of the drawback amounting to 401,000 pounds in the same period. Imports of cotton fishing nets are much smaller, and come mainly from the United Kingdom and Japan. Record exports to this country from Japan amounted to 43,000 pounds in 1917. Imports of nettings, nets, webs, and seines of flax, hemp, or ramie during recent years were as follows: * * *.

In the United States Tariff Commission's Report to the United States Senate on "Nets and Netting and Other Fishing Gear," report 117, second series, page 1, under the caption "Fish Nets and Netting, General," the following appears:

Fishermen usually refer to fish netting as "webbing," to distinguish it from rigged nets used in fishing. Rigged nets include, in addition to netting, attach-

ments such as floats, sinkers, and ropes by which the netting is manipulated. In this report the term "net" is used to refer to a rigged net and "netting" to refer to webbing.

There is little trade in nets; netting is usually bought by the fishermen, who do the rigging themselves or have it done by men employed for that purpose.

We think the foregoing reports of the Tariff Commission fully confirm that in the tariff sense the terms "nets" and "netting" are to be distinguished, and that the said provision for "fishing nets" in said trade agreement with the United Kingdom is to be confined to completed nets, and does not include the imported merchandise, which is netting for making into fishing nets.

The claim of the plaintiff is therefore overruled. Judgment will be rendered accordingly.