BEFORE THE SECOND DIVISION, NOVEMBER 15, 1949

**No. 53713.**—Florida Fishermens Supply Co. *v.* United States, protest 144602–K (Tampa).

RAO, Judge: This is a suit to recover duties alleged to have been erroneously assessed upon certain merchandise, imported through the port of Tampa, Fla. The merchandise, described on the consular invoice as fishing nets, was assessed with duty at the rate of 40 per centum ad valorem, pursuant to paragraph 923 of the Tariff Act of 1930, as manufactures in chief value of cotton, not specially provided for. It was claimed in the protest that the merchandise is properly dutiable at only 30 per centum ad valorem under the provisions of said paragraph 923, as modified by the General Agreement on Tariffs and Trade, 82 Treas. Dec. 305, T. D. 51802, as fishing nets valued at 50 cents or more per pound.

Alternatively, it was alleged that the merchandise was dutiable at the 30 per centum rate, by similitude, as provided in paragraph 1559 of said act, or at 20 per centum ad valorem, pursuant to the provision of paragraph 1558 thereof, as a nonenumerated manufactured article.

T. D. 51802, *supra*, provides as follows:

| Tariff Act of 1930, paragraph | Description of products | Rate of duty |
|---|---|---|
| 923 | Manufactures, wholly or in chief value of cotton, not specially provided for: <br> * * * * * * * <br> Fishing nets valued at 50 cents or more per pound_____ | 30% ad val. |

The record consists of the testimony of Mr. J. H. Weil, the sole owner of the plaintiff company, who appeared in person herein. No sample of the imported merchandise was introduced in evidence, nor did the Government produce any witnesses. The Government conceded, however, that the merchandise is a manufacture of cotton valued at 50 cents or more per pound.

Mr. Weil testified that he had been in the commercial fishing business for a period of 12 years and that the instant merchandise, imported in lengths of 500 yards, consisted of small mesh nets used in the lengths imported as commercial fishing nets to catch minnows and shrimps. In the form in which the merchandise was imported, it was composed of small pieces of net which had been sewn together by the factory at the importer's request. After importation, the merchandise was, variously, cut into lengths of 50 or 75 yards or more, as requested by the

customer, or sold in one piece. Customers who purchased the cut lengths used it for catching minnows. Some would add sinkers and floats, others would not. However, no nets are ever imported with floats and sinkers attached. The witness stated that there is no other use for the imported merchandise except as fish nets.

T. D. 51802, *supra*, carves out of the general provision of paragraph 923 of the Tariff Act of 1930 for all manufactures of cotton, not specially provided for, a specific provision for fishing nets valued at 50 cents or more per pound and reduces the rate of duty thereon to 30 per centum ad valorem. Since the instant merchandise is concededly manufactures of cotton, valued at 50 cents or more per pound, the only issue to be determined herein is whether it consists of fishing nets. Otherwise stated, the question for determination is whether the provision for fishing nets is limited to those articles which in their imported condition are immediately usable as nets for the catching of fish or whether said provision is broad enough to include long lengths of fish netting which may or may not be cut before use.

The subsidiary consideration of whether it has been established as a fact that the instant merchandise is sold and used in its condition as imported, without being cut into shorter lengths, must be resolved against the importer herein for the reason that, although he testified that the merchandise is sometimes sold in its condition as imported and is not cut up before use, he did not affirmatively establish what proportion of the imported fish nettings was sold in that manner.

The collector cites T. D. 50102 (1), 75 Treas. Dec. 320, as the basis for affirming his original classification of the instant merchandise. The reference is to a ruling of the Bureau of Customs as to the scope of the modification in the trade agreement with the United Kingdom, 74 Treas. Dec. 253, T. D. 49753, of paragraph 923 of the Tariff Act of 1930. That modification contained the first specific provision for "fishing nets valued at 50 cents or more per pound" and is identical with the language of T. D. 51802, *supra*.

The issue raised herein was the subject of decision in the case of *W. H. Augur, Inc. v. United States*, 7 Cust. Ct. 198, C. D. 567, decided after the trade agreement with the United Kingdom, *supra*, was negotiated. It was there held that the provision in said trade agreement for "fishing nets valued at 50 cents or more per pound" was confined to completed nets, and did not include pieces of fish netting which, before used by fishermen, had to be cut into shorter lengths, bound on the edges, and fitted with cork, lead, and lines. Testimony had been offered on behalf of the plaintiff therein to the effect that fishing nets are sold in all sizes from 20 feet to 700 yards; that, in the fishermen's supplies business the terms "fish nets" and "fish netting" are synonymous and that completed fishing nets are never imported. According to the defendant's witness, however, the material was known as netting, whereas, when it was cut into definite lengths and fitted with corks, lead, and lines, it was sold as fish nets.

The court observed that while there was no specific provision in the Tariff Act of 1930 for cotton fish nets and/or nettings, elsewhere in said act, to wit, in paragraphs 1006, 920, 1523, and 372, Congress used both terms simultaneously, thus indicating that the words "nets" and "nettings" were not to be regarded, at least for tariff purposes, as being synonymous.

Reference was also made to certain statements in the "Digests of Trade Data with Respect to Products on which Concessions were granted by the United States," a volume published by the United States Tariff Commission in 1938 on the "Trade Agreement between the United States and the United Kingdom," as confirming that in the tariff sense the terms "nets" and "nettings" are to be distinguished.

The General Agreement on Tariffs and Trade, T. D. 51802, *supra*, was negotiated after the decision in the *Augur* case, *supra*, was rendered. Nevertheless,

with respect to fish nets, it contained phraseology identical with that appearing in the trade agreement with the United Kingdom, *supra*. Applying a doctrine akin to legislative ratification of judicial interpretation, it may be presumed that the negotiators of the later agreement had knowledge of the judicial construction of the language contained in the earlier one, and that their failure to modify it in any respect is indicative of their acquiescence in such construction.

We hold therefore that the provision for fishing nets in the General Agreement on Tariffs and Trade, *supra*, is limited to completed nets, and that lengths of fish netting, being mere material for such completed nets, are not entitled to the reduced rate of duty.

With respect to the remaining claims in the protest, it is sufficient to state that paragraph 923, *supra*, specifically provides for the instant merchandise. Hence, resort may not be had to either the similitude provision or the provision for non-enumerated manufactured articles. All claims of the protest are therefore overruled.

Judgment will be entered accordingly.