(C. D. 1349)

THE AMERICAN IMPORT CO. *v.* UNITED STATES

## United States Customs Court, Second Division

(Decided July 20, 1951)

*Lawrence, Tuttle & Harper* (*Walter I. Carpeneti* and *Chas. J. Evans* of counsel) for the plaintiff.

*David N. Edelstein*, Assistant Attorney General (*Richard H. Welsh* and *Dorothy C. Bennett*, special attorneys), for the defendant.

Before RAO and FORD, Judges; LAWRENCE, J., not participating

RAO, Judge: The three protests enumerated above raise the question of the proper classification of certain merchandise described in all but one of the invoices covered by said protests as "Cotton Fish Nets." The remaining invoice lists the merchandise as "Landing nets cotton." The nets in question were classified by the collector of customs at the port of San Francisco, Calif., as manufactures of cotton, not specially provided for, and duty was assessed thereon at the rate of 40 per centum ad valorem, pursuant to the provisions of paragraph 923 of the Tariff Act of 1930. It was claimed in the protests that the merchandise is properly dutiable at only 30 per centum ad valorem as "fishing nets valued at 50 cents or more per pound" as provided for in said paragraph 923, as modified by the trade agreement with the United Kingdom, 74 Treas. Dec. 253, T. D. 49753.

It appears from the evidence in this case that despite the variation in invoice descriptions, all of the merchandise under consideration consists of landing nets, differing only in size and color. They are used, after first having the open end mounted on a wooden frame, to lift fish out of the stream, after they have been hooked and brought into shore. To accomplish this purpose, the net is dipped into the water, and the fish are scooped up in it.

A sample of the nets here involved was received in evidence as plaintiff's exhibit 1. According to plaintiff's witness Elias, who is the merchandise manager, in charge of the sales department of plaintiff company, the exhibit is representative of the importations except as to size and color. The witness also stated that, after importation, the nets are sold as landing nets to manufacturers of landing nets, and to hardware jobbers "who need that as replacements for worn-out nets."

It further appears, through the testimony of Albert M. Weiner, customs liquidator and acting deputy collector at the port of San Francisco, that since December 1, 1947, there has been a change of practice with respect to classification of merchandise such as plaintiff's exhibit

1 and that since that date, such merchandise, if valued over 50 cents per pound, has been classified under paragraph 923, *supra*, as modified, as fishing nets, dutiable at the rate of 30 per centum ad valorem.

The provision for fishing nets in paragraph 923 of the Tariff Act of 1930, as modified by the trade agreement with the United Kingdom, *supra*, contains no limitation on the merchandise described thereby other than it shall be valued at 50 cents or more per pound. It would seem, therefore, that any net which is used in fishing would fall within the scope of the provision, provided, of course, it is valued at 50 cents or more per pound. That a landing net is used in fishing is established not only by the uncontradicted testimony of plaintiff's witness Elias, but also by definition of the term itself.

Webster's New International Dictionary, 1948 edition, defines a landing net as "A small dip net, used in fishing to take the captured fish from the water."

Moreover, the fact that dip nets were among the various kinds of nets considered by the trade agreement negotiators at the time the trade agreement with the United Kingdom, *supra*, was adopted is evident from the following statement which is found in the volume entitled "Digests of Trade Data with Respect to Products on which Concessions were granted by the United States" published by the United States Tariff Commission in 1938:

*United States imports*

Imports of cotton fish nets and netting, not recorded separately prior to 1933, have increased steadily from 172,000 pounds in that year to 846,000 pounds in 1937. * * * Almost all of the imports consist of netting or "webbing" to which sinkers, floats, and ropes must be added. A small part of imports, however, consists of completed nets, such as aquarium nets, *dip nets*, and fish bags. * * *. [Italics supplied.]

In the case of *Von Langerke & Antoine* v. *United States*, 26 Treas. Dec. 896, Abstract 35739, it was held that landing nets were excluded from the provision for fishing tackle in paragraph 165 of the Tariff Act of 1909, by the exception contained therein of "fishing lines, fishing nets and seines." Accordingly, the merchandise was held dutiable under paragraph 349 of said act as nets or nettings.

The specific classification resulting from the decision in the *Von Langerke & Antoine* case, *supra*, to wit, that landing nets fell within the provision for nets and nettings, rather than that of paragraph 332 of said act as manufactures of cotton, was reversed in the case of *Horrocks-Ibbotson Co.* v. *United States*, 33 Treas. Dec. 355, T. D. 37410, on the ground that it was in conflict with a decision of the circuit court in the case of *Ederer* v. *United States*, 7 Treas. Dec. 433, T. D. 25111, wherein it had been held that fishing nets were not *ejusdem generis* with the nets and nettings intended to be included in paragraph 339 of the Tariff Act of 1897 (the provision corresponding with

paragraph 349 of the act of 1909, and paragraph 358 of the act of 1913). The landing nets involved in the *Horrocks-Ibbotson Co.* case, *supra*, were therefore held to be dutiable as manufactures of cotton, as provided for in paragraph 266 of said act of 1913. It is significant to note that the court repudiated only that portion of the decision in the case of *Von Langerke & Antoine*, *supra*, which held landing nets to be more specifically provided for as nets and nettings than as manufactures of cotton. The principle enunciated in the earlier case to the effect that landing nets were excluded from the provision for fishing tackle, by the exception contained therein of fishing lines, fishing nets, and seines, must be taken to have been affirmed, at least by implication, since the act under review in the later case, likewise excluded fishing lines, nets, and seines from the provision for fishing tackle.

In the recent case of *Alliance Screw Products Company* v. *United States*, 22 Cust. Ct. 286, Abstract 53036, we held that landing nets, lacking only the handle to be completed nets, were dutiable as cotton fishing nets rather than as manufactures of cotton upon a record which contained evidence that such merchandise is now being classified as cotton fishing nets. It has likewise here been admitted that since December 1, 1947, landing nets are being classified under paragraph 923, *supra*, as modified.

On the question of the value per pound of the instant nets, plaintiff called Carlton S. Hyman, customs examiner at the port of San Francisco. He testified that he was the examiner who passed upon the merchandise covered by the protests before the court, and also upon merchandise similar in all respects to that here involved; that he had not weighed the nets in issue, but had weighed identical nets from the same exporter, nets which were commercially interchangeable, of the same weight, size, and description, and used for the same purpose; and that, depending upon the size, the weight per dozen varied from one-half pound to a pound and a quarter or a pound and one-half. In the opinion of the examiner, the small-size nets would be valued at $3.20 per pound, the large size about $2.40 per pound, for the period of appraisement of the imported merchandise.

The uncontradicted testimony of the examiner herein established sufficiently for the purposes of this case that the nets in question were valued at more than 50 cents per pound. In view of the foregoing, and upon the record as here made, we hold that the instant merchandise is dutiable at 30 per centum ad valorem as provided for in paragraph 923 of the Tariff Act of 1930, as modified by the trade agreement with the United Kingdom, *supra*, as "fishing nets valued at 50 cents or more per pound." The claim to that effect in the protests is therefore sustained.

Judgment will be entered accordingly.