**No. 56507.**—R. P. Oldham Company *v*. United States, protest 161575–K (Los Angeles).

RAO, Judge: This is an action to recover excess duties alleged to have been erroneously assessed against an importation of cotton fish netting. The collector of customs at the port of Los Angeles, Calif., classified the importation as manufactures of cotton, not specially provided for, and assessed duty thereon at the rate of 40 per centum ad valorem, pursuant to the provisions of paragraph 923 of the Tariff Act of 1930.

Plaintiff claims, however, that the involved merchandise is properly dutiable at only 30 per centum ad valorem, as "fishing nets valued at 50 cents or more per pound" by virtue of the modification of said paragraph 923 by the General Agreement on Tariffs and Trade, 82 Treas. Dec. 305, T. D. 51802, and it has been stipulated that insofar as value only is concerned, the importation conforms to the provision of the said trade agreement.

The invoice description of the product before the court reads as follows:

COTTON FISH NETTING

2 strips 1⅛″ stretch mesh;
540 meshes deep; 10/9 thread;
150 fathoms each.

There is evidence in the record explanatory of this invoice description. It appears that each of the imported strips of fish netting or webbing is a meshed

material composed of a size-9 cotton thread. The meshes, when stretched, measure 1⅛ inches, and the material being 540 meshes deep, there is a total width or depth of 607½ inches, or approximately 50⅔ feet. In length, the material measures 150 fathoms or 900 feet.

Plaintiff's illustrative exhibit 1 is a representative sample of the imported material, except as to size and the fact that it has been tarred.

It appears further that the instant fish netting was specially ordered by plaintiff upon the request of some fishermen in the area of Monterey, Calif., and that it is to be used in the making of a purse seine net for sardine fishing.

Two thoroughly experienced fishermen gave evidence for the plaintiff concerning the construction and method of use of purse seine nets in sardine fishing. Their testimony, together with that of the plaintiff, which constitutes all of the oral evidence in this case, establishes that purse seine nets are never sold or purchased in a finished condition, as they weigh over 5,000 pounds, and are too bulky to handle. Moreover, fishermen prefer to construct their own nets to conform to the size of the boat on which they are to be used, and to reflect the fisherman's personal experience as to what will produce the most successful catch.

As a rule, purse seine nets for sardine fishing vary in length from 175 to 300 fathoms (1,050 to 1,800 feet) and in depth from about 25 to 30 fathoms (150 to 180 feet), depending upon the size of the boat, the depth of the water to be fished, and the fishermen's preferences. However, it has neither been affirmatively established, nor specifically refuted, that nets are made as short as 150 fathoms (900 feet). In view of the fact that the instant merchandise was a special order, it is reasonable to infer that the ultimate purchaser intended to use the netting in the imported length for a completed net of 150 fathoms, and that it was not to be pieced.

A complete purse seine net is made of strips of webbing of various-sized meshes and different size threads, all of the same length, but not necessarily of the same depth, laced together, each of the strips being essential to the proper functioning of the net. It usually includes 4 or 5 strips of webbing of the type of plaintiff's illustrative exhibit 1, each running 400 meshes deep. Before the strips are laced together, they are tarred to preserve the nets and make them last longer.

Plaintiff's exhibits 2, 3, and 4 are sample pieces of heavier webbing, with larger meshes than plaintiff's illustrative exhibit 1, representative of the other strips used in the completed net, for the attachment of the cork line and the lead line. As explained by the witnesses, strips of these types of webbing are necessary to sustain the weight of the net. It is not disputed that strips of the imported material only could not be combined to make a purse seine net, as such material has neither the strength not the durability for sardine fishing.

Plaintiff's illustrative exhibit 5 is a representative diagram of a standard sardine net, describing the weight and mesh of the strips ordinarily laced together, and giving the dimensions of the respective parts and of the whole.

Plaintiff's illustrative exhibit 5-A depicts diagrammatically the setting or laying of a purse seine net. The net is set off the stern of the boat, and carried by a lifeboat or skiff in a complete circle, and back to the fishing boat. After it is laid, rope or cable which has been strung through rings at the bottom of the net is pulled, thus closing the net and trapping the fish. The net is then strapped in with a boom, worked mechanically off the winch, and the fish are brailed or scooped out of the net.

Plaintiff contends here that the merchandise at bar consists of "fishing nets" within the meaning of paragraph 923 of the Tariff Act of 1930, as modified, *supra*, upon the theory that it "is dedicated by its form, construction and size to being used as a fishing net used for purse seining"; that it was ready for such use without cutting or any other preparation except tarring; and that a purse seine net is

actually one or more strips of net such as that imported, the remainder of the net being merely attachments for holding the cork floats and lead sinkers. In support of that contention, plaintiff relies upon a Treasury ruling interpreting identical language found in the trade agreement with the United Kingdom, 74 Treas. Dec. 253, T. D. 49753, which ruling is cited as 75 Treas. Dec. 320, T. D. 50102 (1), and the cases of *United States* v. *Quong Sang Chong & Co., Wo Kee & Co.*, 19 C. C. P. A. (Customs) 172, T. D. 45277; *Wo Kee & Co.* v. *United States*, 21 C. C. P. A. (Customs) 366, T. D. 46890; *The American Import Co.* v. *United States*, 27 Cust. Ct. 65, C. D. 1349; *United States* v. *Lyon & Healy*, 4 Ct. Cust. Appls. 438, T. D. 33873; *United States* v. *Baxter et al.*, 9 Ct. Cust. Appls. 99, T. D. 37975; *United States* v. *Horni Signal Mfg. Co., Inc.*, 27 C. C. P. A. (Customs) 316, C. A. D. 106; and *Barber et al.* v. *United States*, 6 Cust. Ct. 340, C. D. 492.

It is the Government's position that the merchandise at bar is not, in its imported condition, "fishing nets" within the contemplation of said paragraph 923, as modified, but that it is mere material for conversion into completed nets, after it has been cut into appropriate lengths, and the strips of mesh have been sewn together.

As heretofore noted, it does not clearly appear from this record that the fish netting here involved must be cut into appropriate lengths before being joined to other strips of webbing in the making of a purse seine net. Nevertheless, we do not think this is a controlling characteristic in the determination of whether or not the importation consists of fishing nets within the meaning of said paragraph 923, as modified.

"Fishing nets" were first *eo nomine* provided for when paragraph 923, *supra*, was modified by the trade agreement with the United Kingdom, *supra*. This court construed the trade agreement provision in the case of *W. A. Augur, Inc.* v. *United States*, 7 Cust. Ct. 198, C. D. 567, and there reached the conclusion, based in part upon reports of the Tariff Commission, and the "Digests of Trade Data with Respect to Products on which Concessions were granted by the United States," published by the United States Tariff Commission in connection with the trade agreement with the United Kingdom, that the terms "nets" and "nettings" are, in a tariff sense, distinct and separate concepts, the former referring to completed articles, the latter to material in the piece. Accordingly, it was held that fish netting, which after importation was cut off in definite lengths and fitted with corks, leads, and lines, before being sold as fish nets, was not "fishing nets" within the meaning of said paragraph 923, as modified.

This construction was adopted and followed in the case of *Florida Fishermens Supply Co.* v. *United States*, 23 Cust. Ct. 204, Abstract 53713, with respect to the provision for "fishing nets" in the General Agreement on Tariffs and Trade. Again, it was stated that the term "fishing nets" was "limited to completed nets, and that lengths of fish netting, being mere material for such completed nets, are not entitled to the reduced rate of duty."

We think the evidence in this case clearly establishes that the instant merchandise, in its imported condition, is not a single complete fishing net. Not only have the witnesses testified that to obtain sufficient depth for a purse seine net for sardine fishing, at least three, if not four or five, strips of material such as that imported must be laced together, and we note particularly that plaintiff's witness, Barcott, described plaintiff's illustrative exhibit 1 as "sardine webbing," but it was also stated that a net made of such material only "won't last too long and it would be too weak and you couldn't handle it as easy as you could this other Exhibit Four here." We are convinced that the heavier pieces of netting, represented by exhibits 2, 3, and 4, are essential, functional portions of a purse seine net for sardine fishing, and without them the net would be incomplete.

It has not been suggested that the webbing in issue, in its imported condition, possesses any utility as a complete net, subject only to the attachment of floats and sinkers, for any other type of fishing. On the record before us, we must conclude that the imported material is not a fishing net, but that it is fish netting, designed to be used as a part of a completed fish net. As the paragraph in question makes no provision for parts, and by construction excludes fish netting or material in the piece for making fishing nets, the claim of the plaintiff must be overruled.

We have carefully examined the authorities cited by plaintiff, but find therein no principle suggestive of a conclusion different from that here reached. The cases of *United States* v. *Quong Sang Chong & Co., Wo Kee & Co.,* and *Wo Kee & Co.* v. *United States, supra,* are readily distinguishable from the case at bar, as the court there found the involved merchandise, in its imported condition, to be capable of use as a complete net for fishing, although it appeared that for profitable commercial shrimp fishing, an additional length of net of the same diameter and mesh as the bottom end of the imported article was added.

For the foregoing reasons, we hold that the merchandise at bar was properly assessed with duty at the rate of 40 per centum ad valorem, as manufactures of cotton, not specially provided for, pursuant to the provisions of paragraph 923 of the Tariff Act of 1930. All claims in the protest are, therefore, overruled. Judgment will be entered accordingly.