R. P. Oldham Company *v.* United States (No. 4738)[1]

United States Court of Customs and Patent Appeals, June 3, 1953

*Lawrence, Tuttle & Harper* (*Frank L. Lawrence* of counsel) for appellant.
*Charles J. Wagner,* Acting Assistant Attorney General (Alfred A. Taylor, Jr. and Richard F. Weeks, special attorneys, of counsel), for the United States.

[Oral argument April 16, 1953, by Mr. Tuttle and Mr. Weeks]

Before Garrett, Chief Judge, and O'Connell, Johnson, Worley, and Cole, Associate Judges

Cole, Judge, delivered the opinion of the court:

The subject importation of this appeal consists of merchandise invoiced as "Cotton Fish Netting," described in the entry as "4 bales

---

[1] C. A. D. 528.

cotton fishing nets;" classified by the collector as a manufacture of cotton, not specially provided for, at 40 per cent ad valorem, and claimed in appellant-importer's protest to be properly dutiable under the same paragraph as fishing nets at 30 per cent ad valorem.

The involved statute reads as follows:

Tariff Act of 1930:
> Par. 923.   All manufactures, wholly or in chief value of cotton, not specially provided for, 40 per centum ad valorem.
> Paragraph 923, as modified by T. D. 51802:
>> Fishing nets valued at 50 cents or more per pound   _____30% ad val.

The United States Customs Court, Second Division, overruled the protest holding that "the evidence in this case clearly establishes that the instant merchandise, in its imported condition, is not a single complete fishing net." *R. P. Oldham Company* v. *United States,* 28 Cust. Ct. 434, Abs. 56507.

The record discloses that the importation was specially ordered to specification for use in the making of purse seine nets for sardine fishing, and the appellant willingly concedes that it is not, in itself, a complete or rigged or finished net. The testimony, however, clearly establishes that a completed purse seine net is never sold in finished condition due to its bulk and weight, and cannot therefore be purchased as such.

Appellant's witness, Barcott, a well qualified fisherman, identified the merchandise in question as "webbing" and a description thereof was adequately summarized by the trial court, as follows:

> * * * It appears that each of the imported strips of fish netting or webbing [2 strips 1⅛" stretch .mesh] is a meshed material composed of a size–9 cotton thread.   The meshes, [540 meshes deep] when stretched, measure 1⅛" inches, and the material being 540 meshes deep, there is a total width or depth of 607½ inches, or approximately 50⅔ feet.   In length, the material measures 150 fathoms or 900 feet.

The trial court further found that a completed purse seine net varies in length from 175 to 300 fathoms, and in depth from about 25 to 30 fathoms.

The variation in size of a completed purse seine net is quite obviously due to such considerations as depth of water to be fished, size of the boat, fishermen's preferences, and past experience.

To establish the manner of constructing a completed purse seine net, the appellant offered certain exhibits, marked 1, 2, 3, and 4, all of which, having been admitted in evidence, were before us during oral argument of the case on appeal. Exhibit 1 is a sample of the import; the remaining exhibits are samples of other webbing used in a purse seine net. Proper assembly of the foregoing exhibits, in combination with each other, with the addition of the requisite weights, makes up a completed net. Witness Barcott's testimony relative to

the construction of a purse seine net was summarized by counsel for the Government as follows:

* * * The cork line to keep the net afloat is attached to a heavy netting (not the subject import), appellant's Exhibit 2, which has a width of 8 to 10 inches and 1500 feet length. There is laced to this netting, 400 to 500 inches in width and 1500 feet in length, netting (also not the subject import) such as appellant's Exhibit 4. *Attached to this is the imported material, appellant's Exhibit 1, using either 4 to 5 strips each 400 inches in width* depending upon the needs or standards of the fisherman or the size of the boat. Attached to this is heavy netting again, to which the lead line to sink the net is sewn (appellant's Exhibit 3) which measures approximately 400 inches in width. The nets are tarred by the individual strips before they are attached since they would be too bulky and too heavy weighing 4000 to 5000 pounds in their finished condition. About 3000 pounds of lead are used in a net. * * * [Italics quoted.]

     *          *          *          *          *          *          *

* * * *The imported material, appellant's Exhibit 1, could not be used in and of itself without the addition of the other parts, i. e., Exhibits 2, 3 and 4, to make a fishing net.* In answer to the Court's inquiry, he [the witness] stated that a rigged net is a complete net with the corks and leads and the five strips or the four strips all combined. [Italics quoted.]

The facts of this case, reduced to their simplest form, appear to amount to this: Webbing or netting, as imported, is only a part of a completed purse seine fishing net. In its condition upon entry it could not be used to catch sardines. When assembled with other pieces of webbing or netting (and weights added), it becomes a fishing net, or, as stated by the trial court, "the heavier pieces of netting, represented by exhibits 2, 3, and 4, are essential, functional portions of a purse seine net for sardine fishing, and without them the net would be incomplete."

The cases of *W. A. Augur, Inc.* v. *United States*, 7 Cust. Ct. 198, and *Florida Fishermens Supply Co.* v. *United States*, 23 Cust. Ct. 204, neither being appealed, were cited by the trial court as authority for the proposition that the *eo nomine* provision for fishing nets in paragraph 923 did not include parts of such nets, i. e., netting, but was limited to complete nets.

Government counsel likewise embrace these decisions in their brief herein, and argue that the rule laid down by the Customs Court therein is controlling here, i. e., that in a tariff sense, the terms "nets" and "netting" are to be distinguished and that the provision for fishing nets is limited to complete nets; and that lengths of fish netting is mere material for such completed nets.

In the *Augur* case, *supra*, there was evidence both as to the use of the imported merchandise (similar to that before us), as such for nets, and requiring additions thereto, such as described herein, before it could be so used, without the clear weight being with the Government's position as we have found to be the case in the instant record.

Without expressing any doubt as to which way the scales tilted therein, the court analyzed important conditions in determining intent, as found in appropriate provisions of the Tariff Act of 1930, and explanations in "Digests of Trade Data with Respect to Products on which Concessions were granted by the United States," published by the United States Tariff Commission in 1938 on the Trade Agreement with the United Kingdom. Likewise, other reports of the United States Tariff Commission and definitions from the Dictionary of Tariff Information were consulted. This conclusion was reached.

We think the foregoing reports of the Tariff Commission fully confirm that in the tariff sense the terms "nets" and "netting" are to be distinguished, and that the said provision for "fishing nets" in said trade agreement with the United Kingdom is to be confined to completed nets, and does not include the imported merchandise, which is netting for making into fishing nets.

In the *Florida Fishermens* case, *supra*, the facts were somewhat different but the issues were sufficiently similar for the *Augur* case to be accepted as authority by the court for its ruling. For instance, in the *Florida Fishermens* case the sole testimony was presented by one witness for the importer and this was to the effect that the imported merchandise was capable of being used as such for catching minnows and shrimps, and they were therefore known and sold commercially as fishing nets. In some instances, weights and floats would be added. Upon that record, the United States Customs Court, Second Division, speaking through Judge Rao (the author of the opinion in the instant case), said:

* * * Otherwise stated, the question for determination is whether the provision for fishing nets is limited to those articles which in their imported condition are immediately usable as nets for the catching of fish or whether said provision is broad enough to include long lengths of fish netting which may or may not be cut before use.

The subsidiary consideration of whether it has been established as a fact that the instant merchandise is sold and used in its condition as imported, without being cut into shorter lengths, must be resolved against the importer herein for the reason that, although he testified that the merchandise is sometimes sold in its condition as imported and is not cut up before use, he did not affirmatively establish what proportion of the imported fish nettings was sold in that manner.

With that status of the record determined, the court relied upon the *Augur* case as sufficient authority that the provision for fishing nets was limited to completed nets and that lengths of fish netting, being mere material for such completed nets, was not entitled to the reduced rate of duty.

As we read those cases, we think they fully support the conclusion the court below reached in this proceeding.

Despite the soundness of reasoning and logic laid down in the two cited cases, which have influenced our decision herein, the appellant presents considerable argument against the same largely because of

cited definitions found in various dictionaries, encylopedias, catalogues, and certain opinions in cases not involving like merchandise. While it is possible—as we find it—to consult such definitions of the words "net" and "netting" and be faced with some confusion, if not doubt as to whether any state of facts on the subject would be free from application to one or the other category, there should be no resort to such influence in a case of this character.  Here, we are faced with a record in which the description of nets and nettings is given by competent witnesses and what they say makes abundant sense.  In many instances, the controlling part of a lexicographer's idea is not free from other interpretations intended to mean the same but not accomplishing that purpose.  To permit a casual part of an otherwise clear definition to contradict that principle should not be tolerated.

For the reasons hereinbefore stated, the decision of the United States Customs Court is *affirmed*.

WORLEY, J. dissents.