(C. D. 1518)

E. DILLINGHAM, INC. *v.* UNITED STATES

United States Customs Court, First Division

(Decided April 15, 1953)

*Barnes, Richardson & Colburn* (*Joseph Schwartz* and *Edward N. Glad* of counsel) for the plaintiff.

*Charles J. Wagner*, Acting Assistant Attorney General (*William J. Vitale*, special attorney), for the defendant.

Before OLIVER and MOLLISON, Judges

MOLLISON, Judge: The merchandise the subject of this protest consists of pieces of wood sawn to sizes of 1 inch by 1 inch by 18 to 44 inches, and squared at the ends. It was assessed with duty at the rate of 25 cents per thousand feet, board measure, under the provisions of paragraph 401 of the Tariff Act of 1930, as modified by the General Agreement on Tariffs and Trade, T. D. 51802, reading as follows:

> Sawed lumber and timber not specially provided for, if of fir, spruce, pine, hemlock, or larch, 25¢ per 1000 ft., board measure.

The protest claim is for free entry of the merchandise under the provision in paragraph 1805 of the same act for—

> Pickets, palings, hoops, and staves of wood of all kinds.

There is no question but that the merchandise involved is made of pine. Samples representative of the importation are before us as plaintiff's collective exhibits 1 and 2. It is undisputed that after importation such articles are made into shade rollers by being turned round, the longer lengths bored, and shorter lengths spliced together and bored, after which a spring is inserted and a metal fastening is put on the ends.

At the trial of the issue, there were incorporated as part of the record in this case the records in the cases of *Minetto Shade Cloth Co.* v. *United States*, the decision in which is reported in 2 Synopsis of Decisions 781, T. D. 20243, and *Quaker Shade Roller Co. et al.* v. *United States*, the decision in which is reported in 8 Treas. Dec. 757, T. D. 25861. Each of those cases involved sticks or pieces of sawed

or undressed pine of dimensions approximately the same as those here involved, and in each case it was held, based upon evidence that such sticks were "bought, sold, and listed as pickets, and that they were so known in trade at and prior to the passage of the present tariff," that they were entitled to classification under the provision in paragraph 202 of the Tariff Act of 1897 for "Pickets, palings, and staves of wood, of all kinds."

In addition to the foregoing, plaintiff offered evidence which, we are satisfied, fairly established that in the shade roller manufacturing industry of the United States, merchandise such as that before us has always been known and bought and sold as "pickets."

In the brief filed on behalf of the plaintiff it is urged that the doctrine of legislative approval of judicial decision is controlling, and it is pointed out that in the four successive tariffs enacted since the decisions in the incorporated cases, Congress has used the identical word, "pickets," without qualification or change. In *United States* v. *Bassichis Co. et al.*, 16 Ct. Cust. Appls. 410, T. D. 43133, cited in the brief filed on behalf of the plaintiff, the doctrine is thus expressed:

This and other courts, in many cases, have given controlling effect to the doctrine that the legislature is presumed to have approved of judicial interpretations of tariff legislative provisions by the subsequent reenactment of the same or substantially the same language.

On behalf of the defendant, it is contended that the involved pieces of wood do not fall within the common or commercial meaning of the term "pickets," as used in the statute, and that the doctrine of legislative approval of judicial decision is not applicable because the intent of the legislature to limit the term "pickets," as used in paragraph 1805 of the Tariff Act of 1930, to such articles as are commonly known and used in fence construction is otherwise made manifest.

In support of its position, defendant has offered evidence indicating that the meaning of the term "pickets" in the lumber and fencing industries of the United States at and prior to the passage of the Tariff Act of 1930 was the same as the definition thereof contained in Webster's New International Dictionary, i. e.:

1. A pointed or sharpened stake, post, peg, or pale; as: (a) A pale used in making fences.

Defendant also offered in evidence the records in the cases of *Pitt & Scott* v. *United States*, decision reported in 47 Treas. Dec. 948, Abstract 48792, and *Van Oppen & Co. et al.* v. *United States*, decision reported in 48 Treas. Dec. 775, Abstract 50576. These cases relate to pickets or palings made of wood used in the construction of fences, and were offered in evidence—

\* \* \* as proof and as an aid to the Court of the common meaning of the word pickets, and also in an effort to show what Congress had in mind when it enacted the Tariff Act of 1930, with respect to pickets. (Tr. p. 66.)

The last statement has reference to the fact that in the Summary of Tariff Information, 1929, compiled by the United States Tariff Commission for the use of the Committee on Ways and Means of the House of Representatives when revision of the Tariff Act of 1922 was under consideration, shows, on page 2663 thereof, that the foregoing decisions were reported as having been made under the Tariff Act of 1922 with respect to the provision for "Pickets, palings, * * *" therein contained.

We are of the opinion that on the state of the law involved herein, decision must be given in favor of the claim made by the plaintiff. If this were the first time that the term "pickets" was the subject of judicial construction, there might be some value to an inquiry concerning the scope of the meaning of the term "pickets," as used in paragraph 1805. This is not, however, a case of first impression. That term has received judicial construction, and it has been determined that it embraces within its meaning shade roller pickets, or merchandise such as that before us, as well as fence pickets. It may well be that in another case or cases the meaning may be judicially determined to encompass other things as well, but it is sufficient for the present to say that the decisions in the cases represented by the incorporated records in *Minetto Shade Cloth Co.* v. *United States*, and *Quaker Shade Roller Co. et al.* v. *United States* stand as judicial constructions of the tariff term "pickets" as embracing merchandise such as that here involved.

Pointing out that the basis of the cited decisions was the holding by the court that the involved articles were "known in trade at and prior to the passage of the present tariff" as pickets, defendant cites the case of *United States* v. *Jules Raunheim (Inc.) et al.*, 17 C. C. P. A. (Customs) 425, T. D. 43867, as authority for the proposition that—

There is no presumption that a commercial *meaning* continues from tariff Act to tariff Act. [Italics added.]

The precise holding of the appellate court in the cited case was:

* * * It has been expressly held by this court that there is no presumption of commercial *designation* continuing from one tariff act to another. [Italics added.]

The term "commercial designation" has reference to a rule of construction which has application in a proper case where it appears that the commercial meaning of a term differs from the common meaning thereof, or the meaning in ordinary speech. It must be carefully distinguished from, and has no application in, a situation where there is no difference in meaning between the common and commercial understandings of a tariff term.

Commercial designation is an issuable fact, and can be established or found only upon evidence. *American Bead Co.* v. *United States*, 7 Ct. Cust. Appls. 18, 21, T. D. 36259, and cases therein cited. Where

relied upon, commercial designation must be proved by a preponderance in weight of the evidence. *French Kreme Co. et al.* v. *United States*, 18 C. C. P. A. (Customs) 301, T. D. 44505.

. On the other hand, the determination of the common meaning of words (and this includes the commercial meaning when it and the common meaning are the same) is matter of law. *Marvel* v. *Merritt*, 116 U. S. 11, 29 L. ed: 550, and *Sonn* v. *Magone*, 159 U. S. 417, 40 L. ed. 203. In such determinations, evidence as to the commercial meaning of the term is advisory only, not binding upon the court, to assist it in the determination of the question of law as to the common meaning of the term in question. *United States* v. *Ben Felsenthal & Co. et al.*, 16 Ct. Cust. Appls. 15, 18, T. D. 42713.

There is nothing to show that the decisions in the cited and incorporated cases of *Minetto Shade Cloth Co.* v. *United States* and *Quaker Shade Roller Co. et al.* v. *United States* were based upon the application of the rule of commercial designation. There is nothing therein to indicate that the court in either case found or considered that the common meaning of the term "pickets" differed from the commercial meaning thereof. It is presumed, in the absence of evidence to the contrary, that the common meaning of words is the same as their commercial meaning. *Swan* v. *Arthur*, 103 U. S. 597, 598, 26 L. ed. 525, 526.

Those decisions stand, therefore, as adjudications of the common meaning of the term "pickets" to the effect that merchandise such as that here involved is within such common meaning. So far as this court is concerned, having judicially so defined the common meaning of the term, such meaning will be adhered to until a determination of a higher court or a legislative change in the statutory language necessitates a changed determination of such meaning. *United States* v. *Ben Felsenthal & Co. et al.*, *supra*; *United States* v. *North American Mercantile Co.*, 17 C. C. P. A. (Customs) 378, T. D. 43820.

There is nothing contrary to the holdings of this court in the *Minetto* and *Quaker* cases, *supra*, in the decisions of this court in the cases of *Pitt & Scott* v. *United States*, and *Van Oppen & Co. et al.* v. *United States*, *supra*, the records in which were offered in evidence by counsel for the defendant. The former cases merely held that shade roller pickets were classifiable under the tariff term "pickets," and the latter cases merely held that fence pickets or palings were also classifiable under the same term. The evidence offered herein by the defendant with respect to the meaning of the term "pickets," as understood in the lumber and fencing industries of the United States, was admittedly offered for the purpose of establishing that the understanding of the term in those industries was in conformance with the common meaning of the term as expressed by the definition found in Webster's New International Dictionary. Such evidence is of advisory effect only,

and, in view of the prior adjudication of the common meaning of that term in the *Minetto* and *Quaker* cases, will be disregarded.

Decision of the case need not rest alone upon adherence to the prior determination of the common meaning of the term by this court. The doctrine of legislative approval of judicial construction is also applicable to the situation. The decisions in the *Minetto* and *Quaker* cases, *supra*, were made during the life of the Tariff Act of 1897. These decisions were called to the attention of Congress at the time revision of that act was under consideration by virtue of the "Notes on Tariff Revision" prepared for the use of the Committee on Ways and Means of the House of Representatives under the direction of the Clerk of the Committee (Washington, Government Printing Office, 1908). At page 258 of that work, under the heading "Paragraph 202" (of the Tariff Act of 1897), and the subheading "Decisions," the following appears:

In G. A. 4299 (T. D. 20243, October 25, 1898) and in G. A. 5871 (T. D. 25861, December 19, 1904) pieces of white pine varying in length from 2 to 4 feet and 1 inch square, intended to be turned into rollers for window shades, were held to be dutiable as pickets.

In the revision of the Tariff Act of 1897, which became the Tariff Act of 1909, paragraph 208 thereof provided for "Pickets, palings * * *," and the same words were used in paragraph 647 of the Tariff Act of 1913, paragraph 1702 of the Tariff Act of 1922, and in paragraph 1805 of the presently existing act. In a somewhat similar situation, involving the reenactment of an identical term in three successive tariff acts, our appellate court in the course of its decision in the case of *United States* v. *Ascher & Co.*, 11 Ct. Cust. Appls. 453, T. D. 39532, said:

* * * It is a familiar rule that such repeated reenactments in identical terms of a tariff provision, and without a substantial change of context after the same has been construed in an authoritative decision, will be accepted as a legislative approval of the construction contained in that decision.

Moreover, it would appear that the construction of the term "pickets" made by this court as including shade roller pickets was also adopted and long followed by the administrative branch of the Government. In a decision of the Bureau of Customs published for the information and guidance of customs officers and others concerned in 64 Treas. Dec. 37, T. D. 46515 (1), the following appears:

(1) *Pickets.*—Sticks of white pine 1 inch by 1 inch by various lengths, imported to be turned into rollers for window shades, are commercially known as pickets and entitled to free entry as such under paragraph 1805, Tariff Act of 1930. T. D. 20243 cited and followed. T. D. 45887 noted. Bureau letter to collector of customs, Detroit, Mich., dated June 23, 1933. (32–4/1805.)

In a like situation in the case of *United States* v. *Kawahara*, 15 Ct. Cust. Appls. 231, T. D. 42242, our appellate court said:

The foregoing facts, not only invite but require the application of a well-established rule, that where a given term in a tariff statute has been judicially interpreted and thereafter reenacted in substantially the same language (such interpretation also having been adopted and long followed by the administrative department), the given term will, if found in a later statute, be given the same interpretation, unless a contrary legislative intent clearly appears. We find no such intent as to the statute here under consideration.

So, here, we find no evidence of a legislative intent to limit the term "pickets," as found in the present tariff act, to those used in the construction of fences, or to exclude from the purview of that provision shade roller pickets such as those here in issue.

For the foregoing reasons the protest claim for free entry under paragraph 1805 is sustained, and judgment will issue accordingly.