(C. D. 1954)

LYONS TRANSPORT v. UNITED STATES

United States Customs Court, Second Division

(Decided January 7, 1958)

*Wallace & Schwartz (Joseph Schwartz* and *Edward N. Glad* of counsel) for the plaintiff.

*George Cochran Doub*, Assistant Attorney General (*Richard H. Welsh*, trial attorney), for the defendant.

Before LAWRENCE, RAO, and FORD, Judges

RAO, Judge: In this action, plaintiff seeks to recover excess duties alleged to have been erroneously assessed upon several importations of so-called aerolinen serrated tapes. The merchandise in question was classified by the collector within the provisions of paragraph 1023 of the Tariff Act of 1930, as modified by the General Agreement on Tariffs and Trade, 82 Treas. Dec. 305, T. D. 51802, for "manufactures, wholly or in chief value of vegetable fiber, except cotton, not specially provided for," and, accordingly, was assessed with duty at the rate of 20 per centum ad valorem.

It is the claim of plaintiff that the subject merchandise is provided for in paragraph 1010 of said act, as modified by said trade agreement, at the dutiable rate of 10 per centum ad valorem, as—

Woven fabrics, not including articles finished or unfinished, of flax, hemp, ramie, or other vegetable fiber, except cotton, or of which these substances or any of them is the component material of chief value, not specially provided for.

Samples representative of the importations, except as to length, are in evidence as plaintiff's collective exhibit 1. These consist of strips of unbleached linen cloth, with pinked edges, in widths of 1½, 2, and 3 inches. A yard of linen fabric, 42 inches wide, of the type from which such strips are cut, was received in evidence as plaintiff's illustrative exhibit 2.

It has been stipulated that the imported goods are woven and are wholly or in chief value of vegetable fiber.

The only oral testimony in the case was given by plaintiff's witness, Harry Cooper, president of Cooper Industries, the ultimate consignee herein, which engages in the business of manufacturing and distributing aircraft parts and supplies. It appears therefrom that the merchandise at bar, which is called Irish aerolinen and is identified, known, and sold as a tape, is used for external coverings of fabric covering airplanes; "for providing resistance against chafing on rib spars coming in contact with the external coverings, and also used as a finishing tape to provide a seam protection for cloth when it is joined together." It is pinked or serrated to provide a cleaner cut and to prevent fraying, and is sold to the aviation industry in rolls varying in length from 80 to 90 yards. In its several applications in that industry, the so-called finishing tape is cut to shorter lengths, but otherwise not changed from its condition as imported.

At the outset, we deem it pertinent to observe that paragraph 1023, as modified, *supra*, is a provision for manufactures, wholly or in chief value of vegetable fiber, other than cotton, and not a provision for

manufactures of fabrics woven from such fiber. Thus, it is apparent that the merchandise at bar, being wholly or in chief value of vegetable fiber, other than cotton, is in fact covered by the language contained in said paragraph and is properly classifiable therein, unless more specifically provided for elsewhere.

Plaintiff contends that there is indeed a more specific designation for the merchandise at bar in the provision of paragraph 1010, as modified, *supra*, for woven fabrics, not including finished or unfinished articles. It is asserted that the imported merchandise has not "been so far manufactured prior to importation that it has become a completed article made from a woven fabric." In support of that claim, plaintiff relies upon the principle first spelled out in the case of *Snow's United States Sample Express Co.* v. *United States*, 8 Ct. Cust. Appls. 17, T. D. 37161, and applied in substance in *Rogers* v. *United States*, 14 Ct. Cust. Appls. 51, T. D. 41552, and in *United States* v. *The Harding Co.*, 21 C. C. P. A. (Customs) 307, T. D. 46830, to the effect that to become a manufacture of a woven fabric, an article must have been so far processed as to be something more than material for further manufacture. The rule was expressed in the *Snow's* case, *supra*, as follows:

* * * To become a finished or unfinished article or a manufacture made from cotton cloth or from cotton cloth printed, within the meaning of paragraphs 253 and 266, the cloth, whether in the piece or not, must have been so dealt with by manufacturing processes that it has acquired either special characteristics which do not properly belong to cotton cloth or cotton cloth printed or a form and individuality which identify the product of such processes as a definite, particular article so far advanced that it is committed to a specific use and is no longer available for the general purposes for which the unprocessed cotton cloth or cotton cloth printed was suitable.

Also cited is the case of *Sterling Button Co.* v. *United States*, 4 Cust. Ct. 213, C. D. 324, wherein it was held that strips of cotton cloth, 39 inches in length, and approximately five-eighths of an inch in width, with fast edges, used, when cut to appropriate lengths, for binding seams, were narrow fabrics with fast edges, rather than trimmings, for the reason that even "if it could be said that the merchandise were dedicated to the exclusive use of making trimmings, it would be, nevertheless, nothing more than a mere material for such use."

It is our view, however, that a more fundamental proposition than whether the instant finishing tapes are articles made from woven fabrics, as distinguished from material not so far processed as to be dedicated to a single use, confronts us here. Simply stated, that issue is whether or not narrow strips of woven cloth, with serrated edges, are, in any event, woven fabrics within the contemplation of said paragraph 1010.

In the case of *United States* v. *Milbank, Leaman & Co.*, 14 Ct. Cust. Appls. 166, T. D. 41693, certain pieces of woolen cloth, classified

within the provisions of paragraph 1109 of the Tariff Act of 1922 for woven fabrics of wool, were claimed to be provided for in paragraph 1119 of said act as manufactures of wool. The court there stated the question before it to be as follows:

> It is not controverted that the goods involved here were woven, and weighed, when imported, more than 4 ounces per square yard and were valued at more than 80 cents per pound. It only remains, therefore, to be seen whether they were "fabrics," within the meaning of said paragraph 1109, for if they were fabrics, such designation must be held to be more specific than manufactures of wool.
> \* \* \*

After noting the definition of the word "fabric" in Webster's New International Dictionary, and the structure of the wool schedule of the act under consideration, together with comparable provisions in the cotton, flax, hemp, and jute, and silk schedules of said act, the court held:

> In the opinion of the court, said paragraph 1109 was intended to and does include cloth or material in the piece and not further manufactured. The goods imported here, being articles made from such woven fabrics, and not being specially provided for, were properly classifiable under paragraph 1119 as manufactures of wool.

It is evident from the court's conclusion, as indicated in the head-note to the case, that, wherever found in any of the textile schedules, the provision for "woven fabrics" "means cloth or material *in the piece* and not further manufactured." [Italics supplied.]

In the case of *United States* v. *Wertheimer Bros. et al.*, 2 Ct. Cust. Appls. 515, T. D. 32249, it was held that the phrase "woven fabrics in the piece" did not apply to strips of silk as narrow as 4, 6, and 10 inches in width. In reaching that conclusion, the court cited with approval the following excerpt from the case of *S. Oppenheimer & Levy et al.* v. *United States*, 1 Treas. Dec. 954, T. D. 21115 (reversed on other grounds, 8 Treas. Dec. 813, T. D. 25901, suits 2943–45):

> Paragraph 387 of the act provides for "woven fabrics in the piece." The term "fabrics" has been held to be applicable particularly to wide or "piece" goods, which are generally intended for use in making wearing apparel and other articles (and have, therefore, to be cut into various smaller forms requisite for that purpose), as contradistinguished from ribbons, bands, and narrow articles, which are put to their final uses in the widths in which they are made. Velvet and plush ribbons were held not to be pile fabrics (Jaffray v. United States, 71 Fed. Rep., 953; 77 Fed. Rep., 868), and the Congress has recognized the distinction between these and wider goods by making special provision for them in paragraph 386 of the act. Cotton ribbons, webbings, and similar narrow articles are likewise distinguished in paragraph 320 from cotton cloth—or piece goods or fabrics—in the same schedule. (See Arnold v. United States, 147 U. S. 494; *in re* Kursheedt Mfg. Co., 54 Fed. Rep., 159; and G. A. 4120.)

We think the provision in paragraph 1010 for "woven fabrics, not including articles finished or unfinished," was clearly intended to perpetuate the conclusions reached in the cited cases and to be limited

to woven fabrics in the piece. The excepting phrase would be meaningless under any other construction.

It needs no extensive elaboration to determine that the strips at bar are not woven fabrics in the piece. The evidence patently shows that they have been cut from piece goods, prior to importation, and as imported are no longer useful for all the purposes for which woven fabrics in the piece may be employed.

By reason of the foregoing, we find and hold that the instant so-called finishing tapes are not "woven fabrics" within the contemplation of paragraph 1010 of the Tariff Act of 1930, as modified, *supra*. Since they are, in fact, manufactures in chief value of vegetable fibers, the collector properly invoked the provisions of paragraph 1023, as modified, *supra*, for their classification. All claims in the protest are, therefore, overruled.

Judgment will be entered accordingly.