In view of the foregoing, the balance of the imported merchandise (models MA–730, ATR–375, CA–2500, and CA–2100) is properly subject to classification under item 682.07, supra, as claimed.

Judgment will be entered accordingly.

<hr />

(C.D. 4819)

PIER I IMPORTS, INC., PLAINTIFF, *v.* UNITED STATES, DEFENDANT

Court No. 75-1-00100

(Decided August 24, 1979)

*Glad, Tuttle & White* (*T. Randolph Ferguson* at the trial and on the brief) for the plaintiff.

*Alice Daniel,* Acting Assistant Attorney General; *Joseph I. Liebman,* Attorney in Charge, Field Office for Customs Litigation (*Robert H. White* at the trial and on the brief), for the defendant.

LANDIS, Judge: This classification case involves seven importations from Japan, invoiced as "cotton fishing net," which entered the port of Los Angeles during the period May 1973 through May 1974. The merchandise was classified under TSUS item 386.04, as modified by T.D. 68–9, as "Articles not specially provided for, of textile materials: Lace or net articles, whether or not ornamented, * * * Of cotton". Plaintiff claims the merchandise should properly be classified under TSUS item 355.35, as modified by T.D. 68–9, as cotton fish netting. The full item numbers are set out below.*

The nub of the case is whether plaintiff has made a showing that the imported merchandise is "fish netting" within the meaning of the tariff schedules. It is the determination of the court that the plaintiff shall not prevail and that the classification by Customs is sustained.

In order to ascertain the common meaning of "fishnets," reference is made to *Webster's Third New International Dictionary of the English Language, Unabridged* (1966), which defines "fishnets" as, viz, "netting fitted with floats and weights or with a supporting frame often oval for catching fish." No different commercial designation has been

---

\* *Classified under:*

SCHEDULE 3.—TEXTILE FIBERS AND TEXTILE PRODUCTS

Part 7.—Miscellaneous Textile Products; Rags and Scrap Cordage

\*   \*   \*   \*   \*   \*

Subpart B.—Textile Articles Not Specially Provided For

*Subpart B headnote:*

  1. This subpart covers articles, of textile materials, not covered elsewhere in the tariff schedules.

---

Articles not specially provided for, of textile materials:

  Lace or net articles, whether or not ornamented, and other articles orna-
mented:

386.04      Of cotton_____ 40% ad val.

*Claimed under:*

SCHEDULE 3.—TEXTILE FIBERS AND TEXTILE PRODUCTS

Part 4.—Fabrics of Special Construction or For Special Purposes; Articles of Wadding or Felt; Fish Nets; Machine Clothing

\*   \*   \*   \*   \*   \*   \*

Subpart C.—Wadding, Felts, and Articles Thereof; Fish Netting and Nets; Artists' Canvas; Coated or Filled Fabrics; Hose; Machine Clothing; Other Special Fabrics

*Subpart C headnotes:*

  1. The provisions of this subpart do not cover—

\*   \*   \*   \*   \*   \*   \*

    (iv) fish landing nets (see part 5B of schedule 7);

\*   \*   \*   \*   \*   \*   \*

    (vii) other articles specially provided for in schedule 7 or elsewhere.

\*   \*   \*   \*   \*   \*   \*

Fish netting and fish nets (including sections thereof), of textile materials:

355.35      Of cotton_____ 17.5% ad val.

suggested or shown and the common meaning is therefore presumed to be the same and controlling. *E. Dillingham, Inc.* v. *United States*, 30 Cust. Ct. 187, C.D. 1518 (1953), *aff'd*, 41 CCPA 221, C.A.D. 555 (1954); *Swan* v. *Arthur*, 103 U.S. 597 (1881) and *Trans-Atlantic Company* v. *United States*, 60 CCPA 100, C.A.D. 1088, 471 F. 2d 1397 (1973).

Plaintiff has cited and quoted from a number of textile and fabric dictionaries and authorities some of which describe "fishnet" as a material resembling "fishing nets."

It is obvious there is a difference between the common meaning evidenced by Webster's Dictionary and the various textile and fabric dictionaries cited by plaintiff. Plaintiff has not shown how widespread (in how many States) a different commercial designation is existent if that is plaintiff's contention. *John A. Steer Company* v. *United States*, 41 Cust. Ct. 156, C.D. 2034 (1958). The burden of proof of commercial designation, if different from the common meaning, must be shown by plaintiff, which has not been done. *Winsor & Newton, Inc.* v. *United States*, 6 Cust. Ct. 82, C.D. 432 (1941); *Border Brokerage Co. et al.* v. *United States*, 39 Cust. Ct. 179, C.D. 1923 (1957).

The record shows plaintiff produced four witnesses and defendant two witnesses.

As stated by plaintiff's witness Paul Fix, the imported merchandise is referred to as a "decorative fish net." He testified:

> * * * I refer to it to the customer as decorative fish net. They ask for fish netting or decorative fish netting, or whatever. And they will ask for something to put on their wall or ceiling, or have a bare space to fill up. I will show them how to fill it up. And we have the shells right there with it, and everything. So, we have a whole seashell section along with the netting. It's displayed with seashells (R. 21).

As to how the merchandise is sold, said witness, Mr. Fix responded:

> * * * We basically merchandise this on a just regular 4 x 8 fixture, and we merchandise it with a display on each end and, you know, a few starfish or shells or whatever displayed with it. And if a customer specifically asks for the use of it or whatnot, I will give them as much as I know how to use it. I have even used it in my own home (R. 20).

In response to the question: "Do you sell fish net or fish netting in your stores which to your knowledge is intended to be used in catching fish?" Mr. Fix responded:

> There has never been a customer that's come in to say "I want some fish netting to catch fish" * * * (R. 26).

Later, he added:

> It's my testimony that the majority of the people who come in and the majority of its uses are for decorative purposes on walls,

ceiling, and wherever, and that as far as catching fish, no, not in my experience (R. 30).

Two of plaintiff's witnesses, Dr. Kaiser, an assistant professor at California State University, and Dr. Lare, a professor of home economics at California State University, testified respectively that the imported merchandise was fish netting and fish net.

Throughout the trial, this fact stood out: The merchandise is not used for fishing. One of defendant's witnesses, Mr. Borti Petrich, a self-employed net maker, testified:

> The strength of the material, it's just not heavy enough. For example, the size of the fish that you would catch in a mesh that big would be quite strong, and this is not capable of holding a fish that big for any length of time (R. 83).

There are other reasons the merchandise is not used for catching fish (R. 86–88).

In plaintiff's brief it is stated the testimony establishes that the subject merchandise (1) is purchased, sold, and advertised as "fishnet" or "fish netting," (2) is similar in its construction to "fishing net," but (3) is probably not sufficiently durable for use in catching fish.

It is of course unquestioned that the legislative history of a tariff provision is a basic consideration in the determination of the intent of Congress as to the scope of the tariff terms.

Defendant has cited and quoted from previous acts of Congress, to wit: Tariff Acts of 1894, 1897, 1909, 1913, 1922, 1930 and the Tariff Classification Act of 1962 as demonstrating a congressional mandate that only commercial fishing nets and fish netting were encompassed in the TSUS provisions, items 355.35 through 355.45. Plaintiff has not refuted this contention of defendant.

The cases of *W. A. Augur, Inc.* v. *United States*, 7 Cust. Ct. 198, C.D. 567 (1941) and *Florida Fishermens Supply Co.* v. *United States*, 23 Cust. Ct. 204, Abs. 53713 (1949) are also interesting in interpreting the earlier statutes.

It is also well settled that the *Summaries of Trade and Tariff Information* are helpful in discerning the scope of TSUS item numbers. *The Englishtown Corporation* v. *United States*, 64 CCPA 84, C.A.D. 1187, 553 F. 2d 1258 (1977); *American Bristle & Hair Drawing Co. et al.* v. *United States*, 59 CCPA 104, C.A.D. 1048, 458 F. 2d 524 (1972); *J. E. Bernard Co.* v. *United States*, 81 Cust. Ct. 60, C.D. 4766 (1978).

With respect to item numbers 355.35 to 355.45, the *Summary of Trade and Tariff Information* (1969) states:

> Imports of fish netting and fishing nets, once very substantial, now have a smaller percentage of the market than formerly. The change in the share supplied by imports has accompanied a change in fishing methods and a shift from nets of vegetable fiber to nets of manmade fiber. [Schedule 3, vol. 4, p. 15.]

This statement implies that fish netting and fishing nets are both used for fishing.

The record in this case clearly establishes that the imported merchandise is merely decorative display netting which is not suitable for commercial fishing.

Based upon the statutory presumption of correctness (28 U.S.C. 2635) cited by defendant, it is obvious that plaintiff has failed to establish a *prima facie* case. *United States* v. *New York Merchandise Co., Inc.*, 58 CCPA 53, C.A.D. 1004, 435 F. 2d 1315 (1970).

The plaintiff's action is dismissed.

(C.D. 4820)